THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| **REBECCA H.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**MARTIN J. O'MALLEY,**[1]<br>**Commissioner of Social Security,**<br><br>**Defendant.** | **MEMORANDUM DECISION<br>AND ORDER**<br><br><br><br>**Case No. 1:23-cv-00022-JCB**<br><br><br>**Magistrate Judge Jared C. Bennett** |

Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have consented to Judge Jared C. Bennett conducting all proceedings in this case, including entry of final judgment.[2] Before the court is Plaintiff Rebecca H.'s ("Plaintiff") appeal of Commissioner of Social Security Martin J. O'Malley's ("Commissioner") final decision determining that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act[3] and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.[4] After careful consideration of the written briefs and the complete record, the court concludes that oral

---

[1] Martin J. O'Malley is now the Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), he has been substituted for Acting Commissioner of Social Security Kilolo Kijakazi as the Defendant in this case. ECF No. 22.

[2] ECF No. 9.

[3] 42 U.S.C. §§ 401-434.

[4] *Id*. §§ 1381-1383f.

argument is not necessary. Based upon the analysis set forth below, the court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff alleges disability due to various physical and mental impairments. Plaintiff applied for DIB and SSI in November 2020.[5] Plaintiff's applications were denied initially[6] and upon reconsideration.[7] On July 12, 2022, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ").[8] The ALJ issued a written decision on August 4, 2022, denying Plaintiff's claims for DIB and SSI.[9] Plaintiff appealed the adverse ruling, and, on January 9, 2023, the Appeals Council denied her appeal,[10] making the ALJ's decision final for purposes of judicial review.[11] On February 23, 2023, Plaintiff filed her complaint in this case seeking judicial review of the Commissioner's final decision.[12]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."[13] The Commissioner's findings, "if supported by substantial evidence,

---

[5] ECF No. 10, Administrative Record ("AR ___") 203-14.

[6] AR 71-96.

[7] AR 97-120.

[8] AR 34-70.

[9] AR 13-33.

[10] AR 1-7.

[11] 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

[12] ECF No. 5.

[13] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).

shall be conclusive."[14] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[15] "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[16] "The [f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[17]

The aforementioned standards apply to the Commissioner's five-step evaluation process for determining whether a claimant is disabled.[18] If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.[19]

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that [her] impairments would have more than a minimal effect on [her] ability to do basic work activities, [she] is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.[20]

---

[14] 42 U.S.C. § 405(g).

[15] *Lax*, 489 F.3d at 1084 (quotations and citation omitted).

[16] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).

[17] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (first alteration in original) (quotations and citation omitted).

[18] 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).

[19] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Williams*, 844 F.2d at 750.

[20] *Williams*, 844 F.2d at 750-51 (quotations and citation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii).

At step three, the claimant must show that his or her impairments meet or equal one of several listed impairments that are "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."[21] "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ."[22] Before considering step four, however, the ALJ must determine the claimant's residual functional capacity ("RFC").[23] An individual's RFC is her greatest ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments.[24] In making this determination, the ALJ must consider all of the claimant's impairments, including impairments that are not severe.[25]

For the fourth step, the claimant must show, given her RFC, that her impairments prevent performance of her "past relevant work."[26] "If the claimant is able to perform [her] previous work, [she] is not disabled."[27] If, however, the claimant is not able to perform her previous work, she "has met [her] burden of proof, establishing a prima facie case of disability."[28]

---

[21] 20 C.F.R. §§ 404.1525(a), 416.925(a); *see also id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).
[22] *Williams*, 844 F.2d at 751.
[23] 20 C.F.R. §§ 404.1520(a)(4), (e), 416.920(a)(4), (e).
[24] *Id.* §§ 404.1545(a)(1), (b)-(c), 416.945(a)(1), (b)-(c).
[25] *Id.* §§ 404.1545(a)(2), 416.945(a)(2).
[26] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).
[27] *Williams*, 844 F.2d at 751.
[28] *Id.*

From here, "[t]he evaluation process . . . proceeds to the fifth and final step," where the burden of proof shifts to the Commissioner.[29] The decision maker must determine "whether the claimant has the [RFC] to perform other work in the national economy in view of [her] age, education, and work experience."[30] If it is determined that the claimant "can make an adjustment to other work," she is not disabled.[31] If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," she is disabled and entitled to benefits.[32]

## ANALYSIS

The ALJ appropriately determined that Plaintiff was not disabled because she could perform past relevant work. The past relevant work that the ALJ determined that Plaintiff could perform required "frequent but not constant contact with the public."[33] Plaintiff challenges that finding. Based upon that challenge, Plaintiff argues that the ALJ's past-relevant-work determination is invalid, and, therefore, this case should be reversed and remanded so that the ALJ can make a step-five determination as to whether any jobs exist in sufficient numbers in the national economy that Plaintiff can perform. Thus, this case turns on whether substantial evidence supports the determination that Plaintiff can have "frequent but not constant contact with the public."[34]

---

[29] *Id.*

[30] *Id.* (quotations and citation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[31] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[32] *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[33] AR 22.

[34] *Id.*

5

Determining how much public contact a claimant can handle requires more subjectivity than most other determinations. Whereas objective tests measure whether, how easily, and for how long a claimant can carry ten pounds or ascend a ladder, no objective tests exist in this record (or to the court's knowledge, for that matter) that would help the ALJ determine how long Plaintiff can interact with the public or coworkers. After all, even the most able-bodied and able-minded among us occasionally feels anxious in certain social situations and may have an awkward social interaction with others from time to time. In the absence of objective tests detailing how long a claimant may successfully interact with "the public" (recognizing that "the public" consists of billions of different personalities each with their own quirks), an ALJ gleans this information by sifting through the record evidence of a claimant's behavior and then inferring from that evidence whether the claimant would be able to engage with the public and coworkers. Making this determination is by no means an exact science, but ALJs are allowed to draw reasonable inferences from the evidence in the record.[35]

In this case, the ALJ based his inferences as to Plaintiff's ability to interact with the public from several data points. The ALJ found that although Plaintiff did have an "awkward" interaction with at least one mental health provider,[36] that same provider still found Plaintiff's social skills to be "fair" and that Plaintiff was a logical, linear thinker.[37] The ALJ also noted that in the overwhelming majority of Plaintiff's medical appointments—and there are quite a few—

---

[35] *See, e.g.*, *Pinnt v. Chater*, 988 F. Supp. 1354, 1360 (D. Colo. 1997) ("Although the ALJ is entitled to draw reasonable inferences, his presumptions, speculations[,] and suppositions should not be substituted for evidence.").

[36] AR 24.

[37] AR 21, 24, 1139-40.

Plaintiff generally had a normal mood, affect, and speech.[38] Additionally, the ALJ pointed out that Plaintiff had never been removed from a job because of an inability to interact with supervisors or other people at work.[39] The ALJ also considered that Plaintiff was taking medications and receiving therapy, both of which helped her manage her mental-health struggles.[40] Finally, the ALJ found that Plaintiff was able to "spend time with others."[41] And this last finding is worth additional elaboration.

Although the narrative text does not provide much detail as to what record evidence the ALJ found persuasive to finding that Plaintiff was able to "spend time with others,"[42] the ALJ's citations to the record more than clarify the factual basis for this finding. The ALJ cited to Plaintiff's Function Report and those that her siblings provided.[43] Question 18 on Plaintiff's Function Report asked about Plaintiff's hobbies and interests, which she described as watching TV, reading, watching her son's soccer games, and helping her sister coach her soccer team.[44] The report then asked Plaintiff to describe any changes in her activities since her limitations began.[45] Plaintiff responded that she no longer runs, hikes, camps, plays softball, volunteers, or

---

[38] AR 21, 24.

[39] AR 21.

[40] AR 22.

[41] AR 21.

[42] *Id*.

[43] AR 26 (citing to Exhibits 5E (AR 258-65), 7E (AR 274-81), 10E (AR 294-301), 11E (AR 302-10), and 11F (AR 1136-1142)).

[44] AR 296.

[45] *Id*.

goes out with friends to plays or concerts.[46] But question 19 then asked the places she goes on a "regular basis," and Plaintiff reported—consistent with her siblings, who also submitted reports—that she attends her son's soccer games.[47] Plaintiff's family members added that Plaintiff also performs part-time work,[48] and Plaintiff's sister reported shopping with Plaintiff regularly.[49] Plaintiff also told a medical provider that her part-time job was as a medical transcriptionist.[50] Even though Plaintiff may not go out with friends, she regularly goes to soccer games, shops (sometimes with her sister), and was working with others in a medical office as a medical transcriptionist.[51] This shows that although Plaintiff may not go out with others for fun, she clearly "spend[s] time with others."[52]

Admittedly, none of these things individually or in the aggregate objectively shows that Plaintiff is able to interact with the public for several hours each day at a job. But these findings support the ALJ's reasonable inference that Plaintiff can frequently interact with the public because even if Plaintiff may behave awkwardly in certain social situations,[53] she demonstrates common-sense characteristics of being able to interact with others and has done so over the

---

[46] *Id*.

[47] *Id*.; *see also* AR 262, 278, 306 (stating that Plaintiff frequently attends her son's soccer games).

[48] AR 262.

[49] AR 278; *see also* AR 262, 306 (stating that Plaintiff goes shopping, sometimes with her sister).

[50] AR 1139.

[51] Although Plaintiff contends that no record evidence supports the ALJ's determination that Plaintiff "spend[s] time with others," AR 21, the record facts above clearly show otherwise.

[52] *Id*.

[53] AR 1139.

course of many medical appointments, soccer games, and jobs.[54] To the extent Plaintiff's anxiety and PTSD affect her interactions with others, Plaintiff is benefiting from mental health therapy and appropriate medication, which further suggests that she can engage in the public far above a de minimis level. From this information, the ALJ could reasonably infer that Plaintiff can interact with the public on a frequent basis while recognizing that her moderate limitation in interacting with others does not allow "constant" public interaction. Indeed, there is no authority stating that a "moderate" limitation in interacting with others requires a finding of less than frequent contact with the public. Accordingly, the ALJ appropriately inferred that Plaintiff can have "frequent but not constant contact with the public"[55] based on facts that are supported by substantial evidence.[56]

Nevertheless, Plaintiff contends that substantial evidence does not support the ALJ's findings because there are contrary inferences that the ALJ could and should have drawn from this same evidence, which show that Plaintiff cannot frequently interact with the public and, therefore, cannot perform past relevant work. However, Plaintiff is improperly asking this court to reweigh the evidence.[57] For example, Plaintiff contends that the ALJ paid short shrift to a

---

[54] AR 21.

[55] AR 22.

[56] Plaintiff contends that the ALJ did not sufficiently explain his decision to provide for meaningful review. ECF No. 16 at 9; ECF No. 21 at 2. This court can follow the ALJ's inferential reasoning, and so can Plaintiff because, as shown below, she argues for contrary evidentiary inferences in her favor in an attempt to prove that she cannot frequently have public contact and, therefore, cannot engage in past relevant work.

[57] *Hamilton v. Sec'y of Health & Hum. Servs.*, 961 F.2d 1495, 1499 (10th Cir. 1992) (dismissing, as a request to reweigh the evidence, the claimant's argument that there was evidence supporting his credibility); *see also Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (providing that the court reviewing the ALJ's decision reviews "only the sufficiency of the evidence, not its

9

medical opinion noting that Plaintiff is "moderately" limited in her ability to interact with others. Although true, Plaintiff fails to tangle with the fact that the ALJ found this medical opinion to be "minimally persuasive."[58] Not only has Plaintiff failed to challenge that "minimally persuasive" finding, but the ALJ adequately explained why that medical opinion earned such a low level of persuasiveness given its inconsistency with other record evidence.[59] This court is in no position to elevate an uncontested, minimally persuasive medical opinion to new heights of material significance on judicial review.

Further, the court is also not going to vest remanding power to the factually barren, single-sentence observations from Plaintiff's siblings regarding Plaintiff having a hard time getting along with others where, as here, the record evidence and reasonable inferences therefrom persuasively establish that she gets along with others well enough to frequently interact with the public. Therefore, Plaintiff's request for the court to reweigh the evidence fails.

---

weight" (emphasis omitted)); *Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (alteration in original) (quotations and citations omitted)).

[58] AR 26.

[59] *Id*. Additionally, even if the medical opinion stating that Plaintiff suffered from a moderate impairment in interacting with others were deemed "highly persuasive," that does not necessarily translate into less than "frequent" contact with the public. The parties have not cited, and this court is unaware of from its own research, any authority that precludes frequent public contact when a "moderate impairment" in interacting with others is present. The ALJ—not this court—is in the best position to navigate to the imprecision of qualifying adjectives expressed in medical opinions and translate them into the conditions of an RFC.

## CONCLUSION AND ORDER

Although determining the extent to which Plaintiff can interact with the public may not be objectively determinable, the ALJ was entitled to make reasonable inferences from facts in the record to make this assessment. The ALJ properly did just that, and this court will reweigh neither the evidence nor the reasonable inferences drawn from therefrom given that the inferences' factual predicates are all supported by substantial evidence in the record. Therefore, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 27th day of February 2024.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge